UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRANCE RAWLS,

    Petitioner,                                   Civil Action No. 09-CV-14690

v.                                                      HON. BERNARD A. FRIEDMAN

DAVID BERGH,

    Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED ON APPEAL IN FORMA PAUPERIS**

This is a habeas case under 28 U.S.C. § 2254. Petitioner Terrance Rawls, a state inmate currently incarcerated at the Thumb Correctional Facility in Lapeer, Michigan, challenges his convictions for (1) armed robbery,[1] (2) two counts of first-degree criminal sexual conduct (CSC),[2] (3) kidnapping,[3] (4) felon in possession of a firearm,[4] (5) felony firearm,[5] and (6) carrying a concealed weapon (CCW).[6] He was sentenced as a habitual offender, fourth offense, to concurrent prison terms of 25 to 50 years for the armed robbery, CSC, and kidnapping convictions, and five to ten years for the CCW and felon-in-possession convictions, each to be served consecutively to a

---

[1] Mich. Comp. Laws § 750.529.

[2] Mich. Comp. Laws § 750.520b(1)(c) (sexual penetration in circumstances involving commission of another felony) and Mich. Comp. Laws § 750.520b(1)(e) (sexual penetration by an actor armed with a weapon).

[3] Mich. Comp. Laws § 750.349.

[4] Mich. Comp. Laws § 750.224f.

[5] Mich. Comp. Laws § 750.227b.

[6] Mich. Comp. Laws § 750.227.

two-year prison term for the felony-firearm conviction. For the reasons set forth below, the court shall denies the petition. The court shall also decline to issue a certificate of appealability or to permit petitioner to proceed on appeal in forma pauperis.

## I. BACKGROUND

The trial in this matter began on May 17, 2006, and concluded on May 24, 2006. During voir dire, because the prosecutor dismissed an African-American juror, defense counsel objected on the basis of *Batson v. Kentucky*, 476 U.S. 79 (1986). Defense counsel claimed that the juror was dismissed because she was an African-American. She stated that the juror's dismissal was related to the dismissal of two other African-American jurors. The prosecutor rebutted defense counsel's claim, stating that the juror was dismissed for the following reasons: (1) the juror was young and a younger person might have difficulty handling the details of the case; (2) the juror was not as open during questioning as the other jurors; and (3) the juror did not make eye during voir dire.

The prosecutor further stated that the juror's dismissal was not related to the dismissal of two other potential African-American jurors. The first African-American juror was dismissed because he had a prior criminal record that was not disclosed on his juror questionnaire, and the other African-America juror was dismissed because the prosecutor thought she would be biased because she was not excused from service due to her work commitments.

The trial court found that the prosecutor's reasons were not based on racial discrimination and therefore denied defense counsel's *Batson* challenge. Testimony at trial revealed the following.

C.S.,[7] the victim in this case, testified that she went out with her girlfriend and her girlfriend's boyfriend, and a man whom they called "Peanut." C.S. later identified "Peanut" in court as petitioner. C.S. did not meet either of the men before that evening. She said they left in her girlfriend's car, drove to a store, and bought some liquor. They were going to a house to play cards but changed their minds and went back to her house, where she picked up her truck. C.S. said petitioner got in the truck with her.

According to C.S.'s testimony, petitioner asked her to drive him to his cousin's house, which she did. He also asked to use her cell phone. C.S. gave him her cell phone, but the battery was dead. Petitioner then took the cell phone into his cousin's house and left it there. He returned to the truck and they then left. Shortly afterward, C.S. said she realized that her phone was left behind, so she asked petitioner if they could go back and get it, which they did. Petitioner went into the house to get the phone. When he came out, he said his cousin was not there. He then asked if he could drive the truck. C.S. agreed. Petitioner drove to a park. They both got out of the truck and walked to a picnic area, where petitioner pulled a pistol from his waistband and made C.S. give him oral sex at gunpoint. He then forced her back into the truck and drove to a dead-end road. Again, he forced her, at gunpoint, to give him oral sex. She said he threatened to kill her if she refused. Petitioner then took her money and driver's license. C.S. further testified that petitioner then drove her to an apartment, where, in the basement, he had intercourse with her.

C.S. testified that she did not consent to any of these sex acts. She said petitioner finally drove her to a party store, where he got out of the truck. While he was in the store, C.S.

---

[7]Rather than using the proper name of the victim in this case, her initials will be used in order to protect her identity.

3

drove away. C.S. testified that she then drove to her friend Toni Farrero's house. Farrero drove her to the hospital. The hospital medical personnel performed a criminal sexual assault exam and collected evidence.

Valerie Bowman, a forensic scientist with the Michigan State Police Crime Laboratory, testified that she received C.S.'s sexual-assault-evidence-collection kit. Bowman also received a DNA sample from petitioner.

Kathy Fox, a forensic scientist employed in the biology unit at the Michigan State Police Crime Laboratory, testified that the testing done on the DNA in C.S.'s sexual-assault kit belonged to C.S. and the petitioner. Fox confirmed petitioner's DNA from the Combined DNA Index System database, which contains DNA samples from convicted felons.

Jeff Collins, a sergeant with the Flint Police Department, along with Sergeant Nelson, conducted a video-taped interview of petitioner in the Genesee County jail, where he was in custody because he had violated his parole. Initially, petitioner denied the allegations and denied knowing C.S. He told Sergeants Collins and Nelson that she was lying. He said C.S. consented to having sex with him. He also denied having a gun.

Following his sentencing, petitioner filed his direct appeal with the Michigan Court of Appeals, raising the following claims:

    I.    Did the trial court err by overruling [petitioner's] objection to the prosecution's use of a peremptory challenge to excuse an African-American juror?

    II.    Did the trial court err by entering four judgments of conviction for criminal sexual conduct in the first degree based on two acts of sexual penetration where each act satisfied the requirements of two different subsections of Mich. Comp. Laws § 750.520b?

The Michigan Court of Appeals vacated two of petitioner's first-degree criminal

4

sexual conduct convictions under the Fifth Amendment Double Jeopardy Clause, and remanded his first-degree criminal sexual conduct convictions to the trial court for modification of his sentence. *See People v. Rawls*, No. 271472, 2007 WL 2807940 (Mich.Ct.App. Sept. 27, 2007). The Court of Appeals affirmed the remainder of the petitioner's convictions. *See id.* at *3.

Petitioner then filed an application for leave to appeal the Court of Appeals's decision with the Michigan Supreme Court, raising his *Batson* claim. The Michigan Supreme Court denied the application on January 8, 2008. *See People v. Rawls*, 480 Mich. 1011, 743 N.W.2d 33 (2008). Petitioner filed the instant petition on December 2, 2009, raising the same claim.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this court's habeas corpus review of state-court decisions. Under the AEDPA, a federal court's review of a habeas proceeding is limited. A federal court may not grant a writ of habeas corpus unless the state adjudication on the merits either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

28 U.S.C. § 2254(d).

The Supreme Court clarified this standard in *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000):

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached

5

by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

## III. DISCUSSION

Petitioner argues that the prosecutor improperly used peremptory challenges to excuse an African-American juror in an attempt to exclude minorities from the jury. Petitioner contends that the Michigan Court of Appeals incorrectly ruled that the trial court dismissed the juror for credible, race-neutral reasons. The Michigan Court of Appeals, in addressing this claim, stated:

> Defendant first argues that the prosecutor exercised a peremptory challenge against an African-American juror on the basis of race in violation of *Batson v. Kentucky*, 476 U.S. 79; 106 S Ct 1712; 90 L.Ed.2d 69 (1986). We disagree and conclude that the trial court properly found that the prosecutor dismissed the juror for credible, race-neutral reasons.
> A peremptory challenge may not be used to strike a juror on the basis of race because it is a violation of the Equal Protection Clause. *People v. Bell*, 473 Mich. 275, 282; 702 NW2d 128 (2005), citing *Batson, supra* at 89, 96-98. A three-step process is involved in determining whether a party improperly exercised a peremptory challenge. *Bell, supra*.
>
>> First, there must be a prima facie showing of discrimination based on race. To establish a prima facie case of discrimination based on race, the opponent of the challenge must show that: (1) the defendant is a member of a cognizable racial group; (2) peremptory challenges are being exercised to exclude members of a certain racial group from the jury pool; and (3) the circumstances raise an inference that the exclusion was based on race. The *Batson* Court directed trial courts to consider all relevant circumstances in deciding whether a prima facie showing has been made. [*Id.* at 282-283. (citations omitted).]

6

"Second, if the trial court determines that a prima facie showing has been made, the burden shifts to the proponent of the peremptory challenge to articulate a race-neutral explanation for the strike." *People v. Knight*, 473 Mich. 324, 337; 701 NW2d 715 (2005), citing *Batson, supra* at 97. The proponent need not make " 'an explanation that is persuasive, or even plausible.' " *Knight, supra*, quoting *Purkett v. Elem*, 514 U.S. 765, 768; 115 S Ct 1769; 131 L.Ed.2d 834 (1995). "Rather, the issue is whether the proponent's explanation is facially valid as a matter of law." *Knight, supra*, citing *Hernandez v. New York*, 500 U.S. 352, 360; 111 S Ct 1859; 114 L.Ed.2d 395 (1991) (plurality opinion). "Finally, if the proponent provides a race-neutral explanation as a matter of law, the trial court must then determine whether the race-neutral explanation is a pretext and whether the opponent of the challenge has proved purposeful discrimination." *Knight, supra* at 337-338, citing *Batson, supra* at 98.

In the present case, the trial court initially concluded that defendant made a prima facie showing of purposeful discrimination and that the prosecutor articulated a race-neutral explanation for the strike. On appeal, neither party challenges these findings by the trial court. Rather, defendant's contention on appeal is focused on the third step of *Batson*, i.e., the trial court's determinations whether the race-neutral explanation is a pretext and whether the opponent of the challenge has proved purposeful discrimination. This Court reviews a trial court's determinations in these regards for clear error. *Knight, supra* at 344-345.

The lower court record reveals that the prosecutor articulated three race-neutral reasons for dismissing the challenged juror. First, the prosecutor noted that the challenged juror was relatively young and, in a case involving a charge of first-degree criminal sexual conduct, a younger person might have difficulty handling the details of the case and interacting with her fellow venire members in a mature fashion. Second, the prosecutor noted that the challenged juror gave distinct and "tight lipped" answers to her questions, giving the prosecutor the impression that the challenged juror would not open up to the other jurors and "could possibly be a bit of a lone wolf." Third, the prosecutor indicated that she watched the challenged juror enter the courtroom and noted that the challenged juror failed to make eye contact or engage her when she asked questions during voir dire.

Following the prosecutor's argument relating to her race-neutral reasons for striking the challenged juror, defense counsel argued that the prosecutor's reasons were insufficient. Defense counsel noted that other young female jurors, who were white, were

> still present on the jury. The trial court subsequently found that the prosecutor's challenge of the challenged juror was not a pretext and that defendant had failed to show purposeful discrimination. The trial court partially based its decision on a comparison of the reasons the prosecutor dismissed two other African-American jurors, noting that a lack of nonverbal communication and a subjective feeling about a particular juror were sufficient race-neutral explanations for striking a juror.
>
> We conclude that the trial court's findings were not clearly erroneous. "The United States Supreme Court has observed that [d]eference to trial court findings on the issue of discriminatory intent makes particular sense in this context because ... the finding largely will turn on evaluation of credibility." *Knight, supra* at 344 (internal quotation marks and citations omitted). The prosecutor's proffered reasons for dismissing the challenged juror were sufficient and race-neutral. Further, there is little evidence in the lower court record to suggest to this Court that the prosecutor's reasons were a pretext. "[T]he best evidence" regarding the reasons for dismissing a juror "often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies peculiarly within a trial judge's province." *Id.* at 345 n 13. Accordingly, defendant has failed to show that the trial court committed clear error.

*Rawls*, 2007 WL 2807940, at *1-2.

"Although a defendant has no right to a 'petit jury composed in whole or in part of persons of [the defendant's] own race,' *Strauder*, 100 U.S., at 305, 25 L.Ed. 664, he or she does have the right to be tried by a jury whose members are selected by nondiscriminatory criteria." *Powers v. Ohio*, 499 U.S. 400, 404 (1991). The exercise of racially discriminatory peremptory challenges offends the Equal Protection Clause if they are made by the state. *See Batson v. Kentucky*, 476 U.S. 79, 88-90 (1986); *Valentine v. United States*, 488 F.3d 325, 338 (6th Cir. 2007). The Supreme Court has stated that *Batson* claims are to be evaluated as follows:

8

> A defendant's *Batson* challenge to a peremptory strike requires a three-step inquiry. First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. 476 U.S., at 96-97, 106 S.Ct. 1712. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. *Id.*, at 97-98, 106 S.Ct. 1712. Although the prosecutor must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive, or even plausible"; so long as the reason is not inherently discriminatory, it suffices. *Purkett v. Elem*, 514 U.S. 765, 767-768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam). Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. *Batson, supra*, at 98, 106 S.Ct. 1712. This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett, supra*, at 768, 115 S.Ct. 1769.

*Rice v. Collins*, 546 U.S. 333, 338 (2006).

In the present case, the Michigan Court of Appeals reasonably determined that petitioner failed to demonstrate racial discrimination on the part of the prosecutor. The trial court engaged in detailed findings of fact, finding that defense counsel made a prima facie showing of discrimination, but that the prosecutor articulated a race-neutral explanation for striking the juror in question. As noted above, the prosecutor indicated that the juror was young in comparison to the rest of the jury venire and lacked life experience, that her responses to voir dire questions were indicative that she might have difficulty relating to the other jurors, and that she did not engage with or make eye contact with the prosecutor during voir dire.

Furthermore, defense counsel was unable to demonstrate why the prosecutor's reasons for dismissing the juror were a pretext for discrimination. Defense counsel argued that this juror's dismissal was part of a pattern related to the prosecutor's previous dismissal of two other

9

African-American jurors. However, the prosecutor also gave satisfactory race-neutral reasons why the other African-American jurors were dismissed.

Under these circumstances, the court concludes that the Michigan Court of Appeals' decision is not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Petitioner is therefore not entitled to habeas relief on his *Batson* claim.

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong . . . . When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In the present case, reasonable jurists would not find its assessment of petitioner's *Batson* claim debatable or wrong. The court therefore declines to issue petitioner a certificate of appealability. For the same reason, the court shall not permit petitioner to proceed on appeal in forma pauperis because any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

## IV.  CONCLUSION

For the reasons stated above,

IT IS ORDERED that the petition in this matter for a writ of habeas corpus is denied.

IT IS FURTHER ORDERED that no certificate of appealability shall issue in this case.

IT IS FURTHER ORDERED that petitioner may not proceed on appeal in forma pauperis.

                                              S/Bernard A.Friedman_____
                                              BERNARD A. FRIEDMAN
                                              SENIOR UNITED STATES DISTRICT JUDGE

Dated: August 19, 2010
       Detroit, Michigan